## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 0:21-cv-60650**

WORLDTEC DISTRIBUTING CORP.,
a Florida Corporation,

     Plaintiff,

vs.

BLUE JAY NUTRACEUTICALS,
LLC, a Texas limited liability company,
and RICK DELFIERRO, individually,

     Defendants.

_____/

## COMPLAINT

Plaintiff, WORLDTEC DISTRIBUTING CORP., a Florida corporation ("Worldtec" or "Plaintiff") sues Defendant, BLUE JAY NUTRACEUTICALS, LLC, a Texas limited liability company ("Blue Jay") and RICK DELFIERRO ("DelFierro") (collectively the "Defendants"), and avers:

## JURISDICTION, PARTIES, AND VENUE

1.     This is an action for damages in excess of $75,000.00, exclusive of attorneys' fees, costs and interest, over which this Court has jurisdiction.

2.     Plaintiff, Worldtec is incorporated under the laws of the State of Florida and has its principal place of business in Florida.

3.     Defendant, Blue Jay is incorporated under the laws of the State of Texas, with a principal place of business in Texas.

4.     At all material times hereto, Defendant, Blue Jay was doing business in Florida.

5.     Defendant, Rick DelFierro is over the age of 18 and a resident of the State of Texas.

6.      At all material times hereto, Defendant, Rick DelFierro was doing business in Florida as President of Blue Jay.

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00.

8.      Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court, Southern District of Florida because it is where Plaintiff is incorporated, Defendants do business, and where a substantial part of the events and/or omissions giving rise to this action occurred.

## GENERAL ALLEGATIONS

9.      On April 22, 2020, Worldtec and Defendant entered into a Partnership Agreement, whereby the parties agreed to each become 50% co-owners of PPE On The Go, LLC ("PPEOTG"). A copy of the parties' Partnership Agreement dated April 22, 2020 (the "Agreement") is incorporated herein and attached hereto as Exhibit "A".

10.     PPEOTG was registered with the Texas Secretary of State as a limited liability company on May 6, 2020.

11.     All terms and conditions of the PPEOTG partnership between the parties is memorialized in the Agreement.

12.     The purpose of PPEOTG was to manufacture and source personal protective equipment ("PPE") kits, and re-sell the PPE kits at an established price.

13.     According to the Agreement, Worldtec and Blue Jay have equal voting rights to act on behalf of PPEOTG.

14.     According to the Agreement, all decisions for the operation of PPEOTG are to be decided based upon the majority vote of ownership interest, meaning that Worldtec and Blue Jay had to agree on all operation decisions.

15.     Per the Agreement, the costs and profits of PPEOTG were to be split 50% between Worldtec and Blue Jay.

16.     Per the Agreement, Blue Jay was and remains responsible for PPEOTG's marketing and production of the PPE.

17.     According to the Addendum to the Agreement, Blue Jay's responsibilities included providing labor for assembly of the PPE kits, provide sanitizer to be included in the PPE kits, provide Federal Trade Commission ("FTC") approved labels for sale of the PPE kits, and providing all branding and graphics and design, and marketing for the PPE kits.

18.     Blue Jay was also responsible for the management of PPEOTG sales.  This included providing an appropriate CRM management system, creating purchase orders and receipts to account for sales, and accounting for orders, sales and PPEOTG expenses within the CRM management system.

19.     DelFierro, as President of Blue Jay and PPEOTG, was responsible for operation and management of Blue Jay's duties for PPEOTG and under the Agreement.

20.     Per the Agreement, Worldtec was and remains responsible for PPEOTG's sourcing of PPE materials and financing to pay for materials, manufacturing, production and sale of PPE.

21.     According to the Addendum to the Agreement, Worldtec's responsibilities also included providing surgical masks, sterile gloves, and/or financing for materials to be included in the PPE kits.

22.     Per the Agreement and operation of PPEOTG, the PPE materials were sourced and funded by Worldtec, and the materials shipped to Blue Jay for production of the PPE kits for sale.

23.     Per the Agreement, Blue Jay was to be paid a commission by PPEOTG for the build-out of the PPE kits.

24.     The parties agreed that initially Worldtec would need to approve any funding for PPEOTG.

25.     The parties agreed that that once PPEOTG was operating on its own at a profit and with programming management in place from Blue Jay, and upon paying back the loans made to PPEOTG by Worldtec, Worldtec would release control of the required approval for funding.

26.     Initially, Worldtec provided Blue Jay with office supplies to set up PPEOTG's corporate office.  This included but was not limited to tables, bins, and other items paid for directly by Worldtec.

27.     Worldtec also assumed an $8,000.00 cost for labor and supplies for the build out of Blue Jay's office space in order to make it more suitable for the operations of PPEOTG.

28.     Worldtec also paid for and supplied the trademark for PPEOTG to be used for branding and marketing.

29.     During the course of the Agreement, Worldtec loaned PPEOTG a total of $310,949.99 for the manufacturing, shipment, and supply of materials to build the PPEOTG PPE kits.

30.     Blue Jay received the materials for build, marketing and sale of the PPE kits by PPEOTG.

31.     During the course of the Agreement and operation of PPEOTG, Blue Jay failed to meet its duty to manage PPEOTG effectively.

32.     Blue Jay improperly labeled and sold PPETOG kits with a label that said the kits were "made in America."  However, the PPE contents of the kits were not made in America, rather the kits were "assembled in America."

33.     Worldtec requested that Blue Jay and DelFierro remove the "made in America" label as the mislabeling may be considered a violation of FTC regulations.

34.     Blue Jay and DelFierro refused to remove the "made in America" labeling despite Worldtec's objection.

35.     During the course of the Agreement and operation of PPEOTG, it became apparent that the inventory Worldtec was financing and supplying to Blue Jay did not match the total number of PPE kits being produced or the remaining inventory.

36.     Worldtec requested Blue Jay and DelFierro provide accurate inventory counts and sale totals for PPEOTG in order to account for the materials that were funded and sourced by Worldtec.

37.     Blue Jay and DelFierro refused to provide an accurate accounting of materials and sales.

38.     In fact, Blue Jay and DelFierro failed to meet their duty to provide an appropriate CRM management system, failed to create purchase orders and receipts to account for sales, and failed to provide Worldtec with appropriate sales numbers for Worldtec to keep proper financial records for PPEOTG.

39.     Worldtec became suspicious of the lack of accounting by Blue Jay and DelFierro and the various unexplained and unaccounted for expenditures made by Blue Jay and DelFierro using funds loaned to PPEOTG by Worldtec.

40.     PPEOTG was operating at a significant financial loss due to the mismanagement by Blue Jay.

41.    Despite PPEOTG operating at a financial loss, and despite having to use funds loaned by Worldtec to PPEOTG to operate, Blue Jay continued to pay itself a commission for build services provided to PPEOTG.

42.    Based upon the lack of accounting, the unexpected expenditures by Blue Jay, the mislabeling of kits, and the overall losses incurred by PPEOTG, Worldtec found a separate company to build the PPE kits for PPEOTG at a cost significantly less than Blue Jay was charging PPEOTG for its build services.  This would allow Worldtec to be repaid the money loaned to PPEOTG, and also significantly increase the profits of PPEOTG, which would in turn benefit both Worldtec and Blue Jay as 50% owners of PPEOTG.

43.    In light of the fact that PPEOTG was operating at a loss and Blue Jay was not receiving any profits from PPEOTG, Blue Jay and DelFierro became upset that Blue Jay would no longer receive a commission for build services from PPEOTG.

44.    Upon information and belief, Blue Jay and DelFierro were taking funds from the PPEOTG bank account but failing to provide any accounting as to where these funds were being used.

45.    Upon information and belief, Blue Jay and DelFierro began stealing business away from PPEOTG for their own benefit using materials and funds loaned to PPEOTG by Worldtec.

46.    Worldtec began to receive complaints from PPEOTG customers that the PPE kits prepared by Blue Jay and purchased from PPEOTG included white masks, rather than printed masks that Blue Jay and DelFierro claimed to have purchased using PPEOTG funds loaned to PPEOTG by Worldtec.

47.     Blue Jay and DelFierro have failed to provide any accounting of the expenditures made on the printed masks from the PPEOTG account using funds loaned to PPEOTG by Worldtec.

48.     BlueJay and DelFierro have failed to provide any accounting of inventory of the printed masks.

49.     Based upon the lack of accounting, the unexpected expenditures by Blue Jay, the mislabeling of kits, the overall losses incurred by PPEOTG, and the information and belief that Blue Jay and DelFierro were stealing from PPEOTG, on July 17, 2020, Worldtec placed a hold on financing provided to PPEOTG.

50.     Blue Jay and DelFierro were notified that unless there was a customer purchase order on file for PPEOTG, Worldtec would not continue to fund PPEOTG.

51.     Instead, Blue Jay and DelFierro continued to spend Worldtec funds from the PPEOTG bank account despite there being no inventory on the floor between the New York distribution hub, Florida and Texas.

52.     On August 1, 2020, Worldtec received email correspondence from DelFierro and Blue Jay suddenly stating that DelFierro was resigning from Worldtec, and that Blue Jay would no longer move forward with Worldtec for a joint venture for PPEOTG.

53.     Blue Jay and DelFierro also made a demand for payment of commissions for services Blue Jay provided to PPEOTG.

54.     Blue Jay and DelFierro suddenly discontinued their duties for PPEOTG required under the Agreement, including but not limited to fulfilling PPEOTG customer orders of PPE kits.

55.     The resignation of Blue Jay from PPEOTG is in direct violation of the Agreement, which requires that Worldtec have the option to purchase the remaining shares of PPEOTG from Blue Jay at a value based upon a valuation of the shares by an outside firm.

56.     As 50% owners of PPEOTG, Blue Jay is responsible for the losses incurred by PPEOTG, and are liable for repayment of the loan owed by PPEOTG to Worldtec.

57.     Blue Jay has failed to pay its 50% liability for losses incurred by PPEOTG.

58.     Blue Jay has failed to pay its 50% liability for loans made to PPEOTG by Worldtec.

59.     Instead, Blue Jay and DelFierro wrongfully attempted to resign from PPEOTG and avoid these losses.

60.     At the time of their attempted resignation, Blue Jay was in possession of PPE kit inventory paid for and provided by Worldtec which was the property of PPEOTG.

61.     This inventory is reflected as an asset on PPEOTG's balance sheet and has a value of $42,528.00.

62.     The inventory includes the following: (1) 10,000 kids PPE kits; (2) 2400 adult PPE kits; (3) 52,000 three-ply masks; (4) Balance of labels- back and front; and (5) VOIP Phones belonging to Worldtec.

63.     Worldtec requested Blue Jay return inventory so that PPEOTG could use another company to build out the kits to fulfill orders that had already been placed by customers of PPEOTG.

64.     Blue Jay failed to return the inventory, including masks and kits, to Worldtec and instead returned only empty PDQ boxes and labels.

65.     The remaining inventory was unaccounted for by Blue Jay and/or Rick DelFierro.

66.     At the time of their attempted resignation, there were open orders from PPEOTG customers that Blue Jay failed to fulfill.

67.     Further, since their attempted resignation, Blue Jay and/or DelFierro have used PPEOTG funds from the PPEOTG bank account for their own use.

68.     At no point in time did Worldtec ever agree to, approve, or provide its shareholder's vote for the operating decisions of PPEOTG made unilaterally by Blue Jay and DelFierro.

69.     Upon information and belief, Blue Jay and DelFierro used the materials provided and paid for by Worldtec for use by PPEOTG to build and sell Blue Jay's own PPE kits for Blue Jay and DelFierro's own benefit, and in competition with PPEOTG.

70.     Upon information and belief, Blue Jay and DelFierro used monies loaned to PPEOTG by Worldtec to build and sell Blue Jay's own PPE kits for Blue Jay and DelFierro's own benefit, and in competition with PPEOTG.

71.     Upon information and belief, Blue Jay and DelFierro stole monies loaned to PPEOTG by Worldtec to make payments to various Blue Jay employees, and DelFierro individually.

72.     Based upon its failure to resign in accordance with the Agreement, Blue Jay is still a 50% owner of PPEOTG.

73.     Despite still being owner and President of PPEOTG, Blue Jay and DelFierro continue to build and sell PPE kits that are identical to PPEOTG's kits for Blue Jay and DelFierro's own benefit and in competition with PPEOTG.

74.     Despite still being owner and President of PPEOTG Blue Jay and DelFierro have also solicited PPEOTG customers to provide PPE kits for Blue Jay and DelFierro's own benefit and in competition with PPEOTG.

75.     Blue Jay and DelFierro have breached their fiduciary duty to PPEOTG by their mismanagement of inventory and assets, disregard for Federal Trade Commission regulations, and for building and selling PPE materials in competition with PPEOTG.

76.     Blue Jay and DelFierro have breached their fiduciary duty to PPEOTG by failing to provide purchase orders and/or sales information for the accurate preparation of profit and loss statements.

77.     Blue Jay and DelFierro have breached their fiduciary duty to PPEOTG by refusing to "Made in the USA" from labels in violation of FTC regulations.

78.     At all material times hereto, Worldtec and its agents and employees performed services for PPEOTG from their principal place of business in Palm Beach County, Florida.

79.     Due to the acts and omissions of Defendant, Worldtec has retained the undersigned law firm to represent it in this action, and has and will continue to incur attorneys' fees and costs.

80.     All conditions precedent to the filing of this action have been performed, waived and/or satisfied.

### COUNT I – BREACH OF CONTRACT
### (against Blue Jay)

81.     Plaintiff reincorporates and realleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

82.     Worldtec and Blue Jay entered into a valid Agreement for the operation of PPEOTG.  *See* Exhibit "A".

83.     Blue Jay committed material breaches of the Agreement.

84.     Plaintiff has suffered and continues to suffer damages caused by Blue Jay's breach of the Agreement.

WHEREFORE, Plaintiff prays for judgment against Blue Jay for its damages, including but not limited to Blue Jay's payment of 50% share of Company losses, Blue Jay's repayment of 50% share of the loan provided to PPEOTG by Wordltec, disgorgement of profits, return of monies stolen, any and all consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, together with such other relief this Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY
### (against all Defendants)

85.     Plaintiff reincorporates and realleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

86.     Plaintiff and Defendants share a relationship whereby Plaintiff reposes trust and confidence in Defendants as co-owners of PPEOTG; and Defendants undertake such trust and assume a duty to advise, counsel and/or protect Plaintiff.

87.     Defendants breached its fiduciary duties to Plaintiffs by:

   a.   Unilaterally making operating decisions for PPEOTG without a shareholder vote;

   b.   Using materials provided and paid for by Worldtec for use by PPEOTG to build and sell Blue Jay's own PPE kits for Blue Jay and DelFierro's own benefit, and in competition with PPEOTG;

   c.   Using monies loaned to PPEOTG by Worldtec to build and sell Blue Jay's own PPE kits for Blue Jay and DelFierro's own benefit, and in competition with PPEOTG;

   d.   Stealing monies loaned to PPEOTG by Worldtec to make payments to various Blue Jay employees, and DelFierro individually;

e.   Building and selling and sell PPE kits that are identical to PPEOTG's kits for Blue Jay and DelFierro's own benefit and in competition with PPEOTG;

f.   Soliciting PPEOTG customers to provide PPE kits for Blue Jay and DelFierro's own benefit and in competition with PPEOTG;

g.   Mismanaging inventory and assets;

h.   Disregarding Federal Trade Commission regulations;

i.   Competing with PPEOTG;

j.   Failing to provide purchase orders and/or sales information for the accurate preparation of profit and loss statements;

k.   Failing to perform their duties under the Agreement; and

l.   Wrongfully resigning from PPEOTG in violation of the terms of the Agreement.

88.   Defendants failed to discharge their duties to PPEOTG in good faith, failed to act with the care of an ordinarily prudent person, and failed to act in the best interests of PPEOTG and Worldtec.

89.   Plaintiffs suffered damages as a result of Defendants breach of their fiduciary duty to Plaintiffs.

WHEREFORE, Plaintiff prays for judgment against Blue Jay for its damages, pre-judgment and post-judgment interest, attorneys' fees and costs, together with such other relief this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT
### (against Blue Jay)

90.   Plaintiff reincorporates and realleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

91.     Plaintiff contends that Blue Jay is in breach of the Agreement.

92.     Plaintiffs is in doubt as to their rights and obligations and are in actual need for declaratory relief as to the enforcement of the Agreement, their management and membership rights in PPEOTG, and the questions set forth herein.

93.     There is a bona fide dispute between the parties necessitating declaratory relief finding that the Agreement is enforceable, that Defendants are obligated to abide by the Agreement, enforcing Plaintiff's rights under the Agreement, and holding that Plaintiff is entitled to a return of monies loaned to PPEOTG, and return of losses incurred in PPEOTG due to Defendant's breaches.

94.     Plaintiff has an actual, practical and present need for the declaration of rights, status, immunities, powers and privileges unto the Agreement between the parties.

WHEREFORE, Plaintiff demands judgment against Defendants awarding Plaintiff threefold its actual damages pursuant to *Fla. Stat.* §772.11, prejudgment interest, costs and reasonable attorneys' fees, and such all and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff prays that this court shall:

    a.  Enter a declaratory judgment finding that Defendants are in breach of the Agreement;

    b.  Enter a declaratory judgment that Defendants are obligated to abide by the Agreement;

    c.  Enter a declaratory judgment enforcing Plaintiff's rights under the Agreement;

    d.  Award Plaintiffs' attorney's fees and costs herein; and

    e.  Grant such further relief as may be equitable and just.

## COUNT IV- CIVIL THEFT
### (against all Defendants)

95.     This is a cause of action for Civil Theft brought pursuant to section 772.11, *Florida Statutes*.

96.     Defendants committed theft under section 812.012 *et seq*., *Florida Statutes*, by converting for their own use the monies loaned by Worldtec to PPEOTG.

97.     Defendants have permanently deprived Plaintiff of these monies, which have a value in excess of $300,000.

98.     Pursuant to section 772.11, *Florida Statutes*, Plaintiff made the prerequisite written demand for its damages but Defendants failed to comply with the Plaintiff's demand.

99.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has incurred damages.

WHEREFORE, Plaintiff prays for judgment against Blue Jay for its damages, treble damages, pre-judgment and post-judgment interest, attorneys' fees and costs, together with such other relief this Court deems just and proper.

## COUNT V – ACCOUNTING

100.    Plaintiff reincorporates and realleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

101.    Plaintiff and Defendants share a fiduciary relationship as owners of PPEOTG and entered into the Agreement.

102.    As a member, Plaintiff has a right to an accounting from Defendants.

103.    Plaintiff will be unable to ascertain the amount of its potential damages and/or the value of its shares PPEOTG without an accounting.

104.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against the Defendants for a complete accounting of PPEOTG and Blue Jay, together with such other relief this Court deems just and proper.

Dated: March 24, 2021

Respectfully submitted,

**SKS LEGAL GROUP, P.A.**
*Counsel for Plaintiff*
101 NE Third Avenue, Suite 1500
Fort Lauderdale, Florida 33301
Phone: 954.637.3713

By: */s/ Robert C. Streit*
    ROBERT C. STREIT
    Florida Bar No. 70780
    rstreit@skslegalgroup.com

EXHIBIT "A"

# PARTNERSHIP AGREEMENT

This Partnership Agreement (the "Agreement") is made and entered into this April 22, 2020 (the "Effective Date"). The Partners in this Agreement are as follows:

- Bluejay Nutraceuticals, LLC.

- WorldTec Corp

The Partners to this Agreement agree to the following:

## I. NAME

This Partnership will be known as PPE ONTHEGO (the "Partnership").

## II. THE PARTNERSHIP

- The Partners wish to become legal partners in business.

- The terms and conditions of their Partnership will be outlined in this Agreement.

- If the Agreement is executed, the Partnership will be in effect on April 22, 2020.

- The Partnership will only be terminated as outlined in this Agreement.

- The Partnership's primary place of business will be 8230 ELmbrook ln #600, Dallas, Texas, 75247.

- The Partnership will be governed under the laws of the state of Texas.

- The Partnership's primary purpose is Manufacture PPE.

Agreement to Re-Sell PPE ONTHEGO

Bluejay Nutraceuticals and Worldtec Corp will manufacture and source the PPE ONTHEGO KIT and will re-sell at current established PPE ONTHEGO price:

Current pricing for single kits are as follow

100-999        $3.00
1000-2500   $2.75
2501-4999   $2.50
5000-9999   $2.25
10,000-25,000 $2.00
2501-100,000 $1.85
100,001-1,000,000 $1.65

Bluejay and Worldtec can purchase for individual use or website singles sells at $1.75
All Large order over 1000 units will be processed by PPEONTHE GO

A 1.75% Commission will be paid to Albert Maldonaldo on all orders made from PPE ONTHEGO at Manufacture sell.

10K UNITS WILL BE PRODUCED AND STORE AT 331 N. BRIERY RD IRVING, TEXAS 75061 UNITLL SALE OF UNITS ARE SOLD.

100 UNITS WILL GO TO WOLRDTEC CORP
100 UNITS WILL GO TO BLUEJAY NUTRACEUTICALS.

This project will require the following from Worldtec Corp:

20k Sterile Gloves or $1,598.00
10k Mask or $6,000.00
10K Stand Up poches from $1,046.00
Uline Glossy Stand-Up Barrier Pouches - 5 x 8 x 2 1/2"

WIRE FOR MASK AND ULINE POUCHES $7,046.00
GLOVES WILL BE SHIPPED BY WORLDTEC CORP TO BLUEJAYNUTRACEUTICALS WAREHOUSE AT 331A N BRIERY RD. IRVING TEXAS 75061.

WIRE CAN BE SENT TO:
CAPITAL ONE BANK
BLUEJAY NUTRACEUTICALS
8230 ELMBROOK LN #600
DALLAS TEXAS 75247

ACCOUNT#4670269513
ROUTING#1119011014

- If applicable, the Partners will obtain any necessary licenses and permits to do business, register its Doing Business As Name ("DBA"), and obtain a Federal Employer Identification Number ("EIN").

## III. CONTRIBUTIONS

The Partners will make an initial contribution to the Partnership as follows:

- Bluejay Nutraceuticals, LLC.: $1.00

- WorldTec Corp: $1.00

Contributions will be submitted no later than April 22, 2020. All capital contributions are final unless all partners give written consent of withdrawal. All contributions will be deposited into a joint capital account.

## IV. INTEREST AND AUTHORITY

The Partners' ownership interest in the Partnership will be as follows:

- Bluejay Nutraceuticals, LLC.: 50%

- WorldTec Corp: 50%

The Partners' authority will be defined by the following unless otherwise stated in the Agreement: All partners will have an equal vote. No Partner is authorized to act on their own in obtaining contracts, financial, or other obligations on the Partnership. Decisions will be based on a majority of equal votes.

The Partnership designates Bluejay Nutraceuticals as the "Partnership Representative" as defined in 26 U.S. Code § 6223. The Partnership has chosen an entity to act as the Partnership Representative, and thus has elected John Mazzie as the "Designated Individual". The Partnership may replace the Partnership Representative or Designated Individual at its own discretion when filing its annual tax return.

## V. COSTS

The Partners will share costs according to the following percentages:

- Bluejay Nutraceuticals, LLC.: 50%

- WorldTec Corp: 50%

## VI. PROFITS

The Partners will share the net profits of the Partnership according to the following percentages:

- Bluejay Nutraceuticals, LLC.: 50%

- WorldTec Corp: 50%

The Profits will be accounted by Worldtec Corp and distributed on the 15th of the month according to the above percentages after the costs of the Partnership have been paid according to the above cost percentages.

## VII. SALARY

All Partners must give their unanimous consent if a permanent salary is to be established and their unanimous consent for the amount of salary to be given to each Partner.

## VIII. PARTNER ROLES

- Management Roles:

- Bluejay Nutraceuticals, LLC.: Marketing and Production

- WorldTec Corp: Sourcing and Financing

## IX. ACCOUNTING

- All accounts related to the Partnership including contribution and distribution accounts will be audited every 6 months.

- All Partners will maintain a joint contribution account. All Partners will maintain a joint distribution account. Partners will keep accurate and complete books of account for all accounts related to the Partnership. Any Partner, whether majority or minority, will be allowed to review all books of account at any time they request.

- Each Partner will be responsible for his or her own taxes on any distributions made.

- Accounting records will be kept on a cash basis.

- The fiscal year will be complete on the last day of December of each year. All Partners will present their position on the state of the Partnership within two weeks of the completion of each fiscal year.

- The following partners will be able to sign checks from any joint Partner account:

- Bluejay Nutraceuticals, LLC.

- WorldTec Corp

## X. NEW PARTNERS

The Partnership will amend this agreement to include new partners upon the written and unanimous vote of all Partners.

The name of the Partnership may be amended if a new Partner is added to the Partnership upon the written and unanimous vote of all Partners.

## XI. WITHDRAWAL OR DEATH

The Partners hereby reserve the right to withdraw from the Partnership at any time. Should a Partner withdraw from the Partnership because of choice or death, the remaining Partners will have the option to buy out the remaining shares of the Partnership. Should the Partners agree to buy out the shares, the shares will be bought in equal amounts by all Partners. The Partners agree to hire an outside firm to assess the value of the remaining shares. Only upon the partners' unanimous agreement will the outside firm's valuation of the shares be considered final. The Partners will have 60 days to decide if they want to buy the remaining shares together and disperse them equally. If all Partners do not agree to buy the shares, individual Partners will then have the right to buy the shares individually. If more than one Partner requests to buy the remaining shares, the shares will be split equally among those Partners wishing to purchase the

shares. Should all Partners agree by unanimous vote, the Partnership may choose to allow a non-Partner to buy the shares thereby replacing the previous Partner.

If no individual Partner(s) finalize a purchase agreement by 60 days, the Partnership will be dissolved.

The name of the Partnership may be amended upon the written and unanimous vote of all Partners if a Partner is successfully bought out.

## XII. DISSOLUTION

Should the Partnership be dissolved by majority vote, the Partnership will be liquidated, and the debts will be paid. All remaining funds after debts have been paid will be distributed based on the percentage of ownership interest outlined in this Agreement.

## XIII. AMENDMENTS

- Amendments may be made hereto upon the unanimous and written consent of all Partners.

- Amendments must be expressly written and have the original signatures of all Partners.

- All amendments, notices, requests, claims, demands and other communications between the parties shall be in writing. All such written communications shall be given (i) by delivery in person, (ii) by a nationally recognized next day courier service, (iii) by first class, registered or certified mail, postage prepaid, (iv) by facsimile or (v) by electronic mail to the addresses of the parties specified in this Agreement or such other addresses specified in writing. All notices shall be effective upon (i) receipt by the party to which the written communication is given, or (ii) on the 5th day following mailing, whichever occurs first.

## XIV. DISPUTE RESOLUTION

The parties will attempt to resolve any dispute arising out of or relating to the Partnership or this Agreement through friendly negotiations amongst the parties. If the matter is not resolved by negotiation, the parties will resolve the dispute using the below Alternative Dispute Resolution (ADR) procedure.

Any controversies or disputes arising out of or relating to the Partnership or this Agreement will be submitted to mediation in accordance with any statutory rules of mediation in the state of Texas. If mediation does not successfully resolve the dispute or is unavailable, the parties may proceed to seek an alternative form of resolution in accordance with any other rights and remedies afforded to them by law.

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered in the manner prescribed by law as of the Effective Date first written above.

Signature: _____ Date: _____ 4/23/20

Bluejay Nutraceuticals, LLC.

Signature: _____ Date: 4/23/2020

WorldTec Corp

**Addendum**

**Responsibilities:**

**Bluejay Nutraceuitcals, LLC.**
Provide Labor of assembly of safety kits
Provide sanitizer 1.5ml single alcohol sabitizer 75% proof
Provide Labels for safety kits
Povide all branding and graphics and design, marketing media kits, etc.

**Worldtec Corp**
Provide FDA approved surgical mask for the production of safety kits at cost.
Provide FDA Sterile gloves Large and Medium for the production of safety kits at cost.
Provide either financing or product of 5"x8" stand up pouches

**PROJECT 1.**

10,000 units of PPE ON THE GO KITS

Manufacture and Package by PPEONTHEGO

Bluejay Nutraceuticals and World Tec Corp will produce 10,000 units of PPE ONTHEGO kits to sell in the current market.

Worldtec Corp will provided product or financing for FDA APPROVED Surgical mask, Sterile Gloves, and stand up 5"x8" pouch.

Bluejay Nutraceuticals will provide Labor, Sanitizer single 1.5ml disposables, labels, and all marketing and branding graphics and efforts.

10,000 units will be produced by Bluejay Nutraceuticals, LLC.

| Current Cost: | | Need Cost to be: |
|---|---|---|
| Mask: | $.60 | .36 |
| Gloves: | $.12 | .08 |
| Label: | $.12 | .08 |
| Sanitizer: | $.12 | .12 |
| Master Pack: | $.3 | .03 |
| Labor: | $.24 | .18 |
| Packaging | $.10 | .08 |
| **Total Cost: $1.33** | | **$.85** |